# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NEENA KREMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| EQUIFAX INFORMATION SERVICES, LLC ) | |
| and MID AMERICAN CREDIT UNION, ) | |
| ) | |
| Defendant. | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, Neena Kremer, by and through undersigned counsel, and for her Complaint against the Defendants, Equifax Information Services, LLC, and Mid American Credit Union, she states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Neena Kremer ("Plaintiff") is a natural person that resides in Olathe, Kansas.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4. Equifax Information Services, LLC ("Equifax") is foreign limited liability company that regularly transacts business in Kansas through its registered agent, Corporation Service Company, 2900 SW Wanamaker Drive, Topeka, Kansas 66614.

5. Equifax is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6. Mid American Credit Union ("Mid American") is a financial services company that engages in a wide variety of banking services, including providing consumers with auto loans.

7. Mid American is domestic entity with its headquarters located at 8404 W. Kellogg, Wichita, Kansas 67209.

8. Mid American is a furnisher of information as contemplated by FCRA § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

10. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

11. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

12. In or around July 2014, Plaintiff entered into a financing agreement with Mid American to purchase a new vehicle.

13. Unfortunately, in early 2015, Plaintiff experienced a sudden reduction in income and fell behind on many of her financial obligations. This included falling behind on the payments owed to Mid American.

14. Eventually the vehicle was repossessed by Mid American and sold at auction.

15. By the end of 2020, Plaintiff was in a better place financially and decided she was ready to purchase a home.

16. To best prepare, Plaintiff obtained a copy of her credit reports to see whether her credit scores had recovered to the point that she would be eligible for mortgage financing.

17. However, after reviewing her credit reports, Plaintiff was surprised to see that her Mid-American loan was reporting inaccurate payment history for the account, including monthly credit updates reflecting her old auto loan as currently owing and past due.

18. This confused Plaintiff, because the account was closed, and no payments or outstanding balance were owed.

19. Mid American was erroneously continuing to update the account as if it recently fell delinquent, and this was re-weighting the account and significantly reducing her credit scores.

20. After consulting with a mortgage lender, Plaintiff's fears were realized – she was advised that the Mid American loan would need to be corrected, or she would not be able to get her loan.

21. On or about January 22, 2021, Plaintiff contacted Equifax by letter to dispute the inaccurate reporting on the Mid American loan.

22. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, Equifax was then required to reasonably investigate Plaintiff's dispute, including forwarding a copy of the dispute to Mid American.

23. Plaintiff received a written response from Equifax stating that Mid American "verified" the accuracy of the reporting to Equifax and the account would not be updated or removed.

24. Plaintiff was discouraged and dismayed. She was already embarrassed at the negative history associated with this loan in the first place. Why was Mid American compounding the problem by inaccurately re-aging the reporting? Why was Equifax allowing the inaccurate reporting to continue? Why wouldn't they remove the inaccurate credit reporting as required?

3

25. Determined to get this problem fixed, on March 9, 2021, Plaintiff sent another letter to Equifax disputing the Mid American reporting.

26. Again, Equifax responded by written letter stating that the Mid American loan was reporting correctly, and no changes would be made.

27. Mid American continues to inaccurately update and re-age the derogatory account on Plaintiff's Equifax report.

28. Plaintiff is at a loss as to how to follow – let alone combat – Mid American and Equifax's logic in allowing this patently inaccurate reporting to continue.

29. After contacting Equifax and Mid American repeatedly to fix this issue without success, Plaintiff fears that she will not be able to obtain an accurate credit report and will continue to lose out on credit opportunities, including her dream of purchasing a home for her family.

30. Plaintiff has lost all trust in the credit reporting system and believes that litigation is her only option to fix this reporting issue.

## CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Equifax

31. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

32. A "consumer reporting agency" is defined by the FCRA as follows:

33. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681a(f).

34. Equifax is a "consumer reporting agency" as defined by the FCRA.

35. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

36. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

37. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

38. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

39. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

**Equifax's Reasonable Reinvestigation Violations**

40. By letters dated January 22, 2021 and March 9, 2021, Plaintiff disputed the inaccurate payment history of the Mid American loan on her Equifax credit report.

41. Plaintiff specifically advised Equifax that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade line be updated accordingly.

42. Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

43. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

44. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

45. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

46. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

47. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$.

**Failure To Follow Reasonable Procedures**
**To Assure Maximum Possible Accuracy**

48. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

49. On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

50. Despite actual and implied knowledge that the Mid American loan was being duplicated, Equifax readily sold inaccurate reports to one or more third parties without regard to the accuracy or inaccuracy of what Equifax reported.

51. On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

52. Through Plaintiff's communications with Equifax, Equifax knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Equifax took no measure to stop painting a false and damaging picture about Plaintiff.

53. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Equifax's pockets.

54. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such

as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

55. Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

56. Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Equifax, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by Mid American

57. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

58. Mid American is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

59. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

60. On at least two (2) occasions, namely, January 22, 2021 and March 9, 2021, Plaintiff contacted Equifax specifically to dispute the accuracy of the payment history Mid American was furnishing regarding her account.

61. Plaintiff specifically advised Equifax on each occasion that the information being reported was false, provided all necessary information to Equifax to support his dispute, and requested the false information be deleted or updated accordingly.

62. Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Mid American received notification of these disputes from Equifax.

63. Nevertheless, the inaccurate Mid American account information was allowed to remain on Plaintiff's credit report under the guise that Mid American had "verified" the information as true.

64. Either Mid American conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow confirmed information known to be false and highly damaging to remain in Plaintiff's credit file.

65. Mid American's failures in this regard are exacerbated by the sheer number of times Mid American was contacted about this particular account.

66. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Mid American negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

67. As a direct and proximate result of Mid American's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

68. Mid American's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Mid American, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Mid American, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

### JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**By: s/Andrew M. Esselman**
Andrew M. Esselman #26113
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 200
Lee's Summit, MO 64064
T: (816) 246-7800
F: (855) 523-6884
andrewe@creditlawcenter.com
Attorney for Plaintiff